# In the United States Court of Federal Claims

No. 07-003 C
(Filed: December 31, 2008)

```
*************************************
LINDA A. STOCUM,                     *
                                     *
         Plaintiff,                  *    RCFC 12(c); Motion for Judgment on the
                                     *    Pleadings; Fair Labor Standards Act,
v.                                   *    29 U.S.C. §§ 201-219; Adams; Bobo;
                                     *    Doctrine of Stare Decisis
THE UNITED STATES,                   *
                                     *
         Defendant.                  *
*************************************
```

Jules Bernstein, Washington, DC, for plaintiff. Edgar James and Linda Lipsett, Washington, DC, of counsel.

Shalom Brilliant, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

  Before the court is Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated ("motion").[1] In this action, defendant seeks a judgment on the pleadings pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims ("RCFC") dismissing plaintiff's claim for compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2000), for time spent driving a government vehicle between home and work. Plaintiff contends that judgment on the pleadings is inappropriate and has requested oral argument on defendant's motion. The court, however, deems oral argument unnecessary. For the reasons set forth below, the court grants defendant's motion.

---

[1] After briefing concluded on defendant's motion, plaintiff filed a Partial Motion for Summary Judgment Regarding the "Driving Time" Issue, Plaintiff's Memorandum of Law in Support Thereof, and Request for Oral Argument ("plaintiff's motion"). Defendant moved the court to stay briefing on plaintiff's motion pending the outcome of its motion for judgment on the pleadings. In a December 22, 2008 ruling, the court granted defendant's motion to stay.

## I. BACKGROUND

**A.**

Congress enacted the FLSA, in part, "to ensure that a covered employee received compensation for all hours worked for the employer[.]" Adams v. United States, 65 Fed. Cl. 217, 221 (2005) ("Adams I"), aff'd, 471 F.3d 1321 (Fed. Cir. 2006) ("Adams II"), reh'g & reh'g en banc denied, 219 Fed. App'x 993 (Fed. Cir. 2007), cert. denied, 128 S. Ct. 866 (2008). Specifically, the FLSA was designed "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act." Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944). Regulations promulgated by the United States Office of Personnel Management ("OPM") provide that "[a]ll time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is 'hours of work.'" 5 C.F.R. § 551.401(a) (2006). Following the United States Supreme Court ("Supreme Court") decision in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), Congress enacted the Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251-262 (2000)), which amended certain provisions of the FLSA, see IBP, Inc. v. Alvarez, 546 U.S. 21, 25-26 (2005) (discussing the Supreme Court's early interpretations of the FLSA); Adams II, 471 F.3d at 1324-25 (same), and "pared back the broad definition of compensable work initially promulgated by the Supreme Court in Anderson," Adams II, 471 F.3d at 1325.

The Portal-to-Portal Act, as amended by the Employee Flexibility in Commuting Act of 1996, Pub. L. No. 104-108, § 2102, 110 Stat. 1755, 1928, exempts certain employee activities from the definition of compensable work under the FLSA. Specifically, it releases an employer from liability under the FLSA for the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). With respect to transportation-based work, the Portal-to-Portal Act further provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use

of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

Id.

**B.**

Plaintiff Linda A. Stocum is employed by the United States Department of Justice, Drug Enforcement Agency ("DEA"), as a diversion investigator. Compl. ¶ 1. On September 29, 2006, plaintiff instituted this action in the United States Court of Federal Claims ("Court of Federal Claims"), alleging that defendant "wilfully [has] violated, and continue[s] wilfully to violate, the provisions of the FLSA and the leave, holiday and premium pay provisions of Title 5 of the U.S. Code by wrongfully and wilfully failing and refusing to provide the plaintiff . . . with pay and benefits due . . . ." Id. ¶ 7. Plaintiff claims that since at least 2003, defendant considered her "as being 'FLSA exempt' and has not accorded [her] the rights to which FLSA non-exempt employees of defendant are entitled," id. ¶ 8, even though she "was not employed by defendant in an exempt capacity within the meaning of 29 U.S.C. § 213(a)(1)," id. ¶ 9; accord id. ¶ 10 (alleging that plaintiff "was FLSA non-exempt since [she] was not a salaried employee within the meaning of" the FLSA and implementing regulations). Plaintiff seeks an award of back pay, leave, absence and holiday compensation, liquidated damages, interest from 2003 to entry of judgment, and attorney's fees. Compl. Prayer for Relief.

On September 29, 2006, the same date on which she filed her complaint, plaintiff filed a notice of indirectly related cases. Plaintiff's notice indicated that the instant action was indirectly related to, among other cases, Adams I, "which [was] currently pending in the United States Court of Federal Claims, [and] the outcome of which [was] likely to call for a determination of the same or substantially similar questions as are presented in the instant case." Pl.'s Notice Indirectly Related Cases 2. Following a status conference with the parties on February 12, 2007, the court entered a stay pending settlement discussions and disposition of the appeal in Adams I that was pending before the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). See Order, Feb. 12, 2007. On June 28, 2007, the parties entered into a partial settlement agreement, see Stipulation of Partial Dismissal, wherein they

> stipulate[d] to the partial dismissal of certain claims asserted in this action pursuant to, and in accordance with, the terms of a partial settlement agreement entered into by the parties on June 28, 2007.
>
> The claims encompassed by the . . . partial settlement agreement and by this stipulation of partial dismissal are plaintiff's claims for compensation under the [FLSA], based upon employment by the [DEA] in non-supervisory diversion

>  investigator positions . . . .
>
>  The partial settlement agreement and this stipulation do not cover plaintiff's FLSA claims for the time solely spent driving a Government vehicle between home and work, or claims based upon employment in positions and at agencies other than those identified above.

Id.; see also J. Status Report, Feb. 29, 2008 (reiterating that the partial settlement agreement did not cover plaintiff's FLSA claim "for the time solely spent driving a Government vehicle between home and work or claims based upon employment in positions at agencies other than the [DEA]"). Plaintiff's only remaining claim, therefore, was for compensation for time spent driving a government vehicle between home and work. Def.'s Mot. J. Pleadings, Dismissing Claims Remaining Adjudicated ("Def.'s Mot.") 2.

Thereafter, the court lifted the stay, see Order, Mar. 10, 2008, and plaintiff filed a motion for discovery related to "the issue of compensability under the [FLSA] for time she has spent driving between home and work in a government vehicle" as a DEA diversion investigator. Pl.'s Mot. Leave Conduct Disc. 1. Defendant objected because "[c]laims identical to the home-to-work driving claims in this case, asserted by thousands of criminal investigators and other employees in various related positions, were previously adjudicated by this Court." Def.'s Opp'n Pl.'s Mot. Leave Conduct Disc. 2. Specifically, defendant argued:

> The Court entered summary judgment in favor of the Government as to all of these claims, holding that the driving in question did not constitute compensable work under the FLSA. The United States Court of Appeals for the Federal Circuit unanimously affirmed this decision. The plaintiffs' petition for rehearing en banc was denied, and the Supreme Court denied plaintiffs' petition for a writ of certiorari.
>
> The issues remaining to be adjudicated in this case are the same as those decided in Adams [II]. The activity in question–driving between home and work in a Government vehicle–is the same. The position involved here is well within the range of positions involved in Adams [II]. . . . [N]o material difference between the driving involved here and in Adams [II] is apparent.

Id. at 2-3 (citation omitted). The court, determining that plaintiff was entitled to fully present the merits of her case, granted plaintiff's motion to conduct discovery. See Order, Apr. 14, 2008. Defendant, on May 29, 2008, filed the instant motion, arguing that plaintiff's claim falls "well within the range of positions involved" in the Federal Circuit's determinations in Adams II and Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998), aff'g 37 Fed. Cl. 690 (2007). Def.'s Mot. 2; accord id. at 3 ("Under controlling precedent, as established by the Federal Circuit in Bobo and Adams [II], Stocum's claim under the FLSA for the time solely spent driving a Government vehicle between home and work must be dismissed as a matter of law."). The court subsequently

stayed briefing on plaintiff's motion for partial summary judgment, which was filed after briefing of the instant motion concluded.  See supra note 1.

## II. STANDARDS FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

An RCFC 12(c) motion "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings . . . ." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004) (discussing Fed. R. Civ. P. 12(c)) (footnote omitted).  Courts "have routinely construed a motion to dismiss for failure to state a claim filed after the answer as a motion for judgment on the pleadings," and the "legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss." Peterson v. United States, 68 Fed. Cl. 773, 776 (2005).  Thus, judgment on the pleadings "is appropriate where there are no material facts in dispute and the [movant] is entitled to judgment as a matter of law." N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994).  Where the government moves the court for judgment on the pleadings, "each of the well-pled allegations in the complaint[] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs." Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990); accord Johns-Manville Corp. v. United States, 12 Cl. Ct. 1, 14 (1987) (construing the predecessor rule to RCFC 12(c) and stating that "[f]or purposes of ruling on a motion for judgment on the pleadings, the traditional standard is that a court must assume that all well-pleaded facts in the nonmovant's pleading are true and that all controverted assertions of the movant's pleadings are false").  The court's ruling "is based on the substantive merits of the claims and defenses as alleged in the non-movant's pleadings." J.M. Huber Corp. v. United States, 27 Fed. Cl. 659, 662 (1993).

A motion for judgment on the pleadings is also similar to a motion for summary judgment.  See 5C Wright & Miller, supra, § 1369 (noting similarities between the two motions).  As discussed above, all factual inferences are drawn in favor of the nonmoving party, as is the case with a motion for summary judgment.  See id.  "A party may present facts outside of the pleadings when bringing or resisting a motion for judgment on the pleadings." Boyer v. United States, No. 00-641C, 2008 WL 5136045, at *2 (Fed. Cl. Nov. 24, 2008).  If matters outside the pleadings are presented to and not excluded by the court, then "the motion must be treated as one for summary judgment under RCFC 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[2]  RCFC 12(d).

---

[2]  Plaintiff argues that "defendant has not submitted any facts by way of affidavits or declarations to support its motion.  Instead[,] defendant has made factual representations based upon unverified statements by defendant's counsel." Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") 2.  However, as noted above, any matters outside the pleadings that defendant would have submitted in support of its motion and that were not excluded by the court would have converted defendant's motion to one for summary judgment.  See Easter v. United States, 83 Fed. Cl. 236, 240 (2008) (converting defendant's RCFC 12(c) motion into one for summary judgment after

In her opposition to defendant's motion, plaintiff includes as an exhibit "Home-To-Work Transportation" regulations set forth at 41 C.F.R. § 102-5 (2007) and referred to in 31 U.S.C. § 1344 (2000). See Pl.'s Opp'n Ex. 1. As noted above, "[g]enerally, in considering a motion for judgment on the pleadings, the court typically does not review matters outside the pleadings, but [it] may consider materials that are part of the public record along with materials that are necessarily embraced by the pleadings." Mason Motor Co. v. DaimlerChrysler Motors Co., No. 04-5071 ADM/AJB, 2006 WL 752906, at *1 (D. Minn. Mar. 23, 2006) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)); accord Dovale v. Marketsource, Inc., No. 05-2872(FLW), 2006 WL 2385099, at *5 (D.N.J. Aug. 17, 2006) (stating that the court must covert the motion "should it choose to consider anything outside of the pleadings, exhibits attached thereto, matters of public record, and all documents that are integral to or explicitly replied upon in the complaint"). Plaintiff's complaint does not explicitly reference either 31 U.S.C. § 1344 or 41 C.F.R. § 102-5.[3] However, should the court consider plaintiff's exhibit, doing so would not compel conversion of defendant's motion into one for summary judgment because the matters contained therein are purely matters of public record. See Savina Home Indus., Inc. v. Sec'y of Labor, 594 F.2d 1358, 1365 (10th Cir. 1979) (noting that standards contained in the Code of Federal Regulations are matters of public record); United States v. Fink, 393 F. Supp. 2d 935, 939 (D.S.D. 2005) (indicating that provisions from the Code of Federal Regulations are public records).

### III. DISCUSSION

As noted above, defendant contends that "[w]ith respect to the question whether the driving in question constitutes compensable work under the FLSA, there is no material difference between the driving involved here and in Bobo and Adams [II]." Def.'s Mot. 3; accord Def.'s Reply 4 (arguing that Bobo and Adams II, neither of which has been overruled or nullified, are binding upon the court). Plaintiff, however, contends that "the reasoning in Adams [II] has been nullified" by two Supreme Court decisions, Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007) and National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005). Pl.'s Opp'n 3. Plaintiff distinguishes the instant case from Adams II, which did not involve driving claims made by diversion investigators. Id. at 13-16. But see Def.'s Reply 8 ("Bobo and Adams[II] are neither distinguishable nor wrong."). Furthermore, plaintiff argues that the doctrine of stare decisis, as it relates to Adams II, is inapplicable. Pl.'s Opp'n 16-17. But see Def.'s Reply 9 (maintaining that binding precedent, rather than stare decisis, is at

---

plaintiffs filed evidence outside of the pleadings in the form of declarations). Thus, it is not surprising that defendant, which seeks judgment on the pleadings, did not submit matters outside the pleadings that would necessitate conversion of its motion into one for summary judgment.

[3] In fact, it is apparent that plaintiff relies upon these provisions in order to respond to defendant's arguments concerning the applicability of Adams II, which defendant maintains is binding upon the court. See Pl.'s Opp'n 13-16; Def.'s Reply Pl.'s Opp'n Def.'s Mot. ("Def.'s Reply") 5-8.

issue before the court).  The court first addresses the precedential value of Adams II and Bobo, and then determines whether these decisions apply to the circumstances presented herein.

### A.  The Court of Federal Claims Is Bound by Controlling Federal Circuit Precedent

"Precedent" is defined as "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues."  Black's Law Dictionary 1195 (7th ed. 1999).  "Binding precedent" is "precedent that a court must follow."  Id.  The Federal Circuit has stated that "[t]here can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims."  Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) (citing First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1290 n.3 (Fed. Cir. 1999)); see also Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005) ("[T]he Court of Federal Claims may not deviate from the precedent of the . . . Federal Circuit any more than the Federal Circuit can deviate from the precedent of the . . . Supreme Court.").  A "trial court may not disregard its reviewing court's precedent."[4]  Strickland, 423 F.3d at 1338 n.3.  Indeed, "[t]rial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court."  Crowley, 398 F.3d at 1335.  Furthermore, the Court of Federal Claims "cannot engage in de novo statutory interpretations once the Federal Circuit has issued a construction of a particular legislative enactment."  Redd v. United States, 83 Fed. Cl. 589, 591 (2008).

As the court acknowledged in Forbes v. United States, "the relevant Federal Circuit precedent is derived from the decisions in Adams[II] and Bobo, both of which address the scope of compensable work under the Portal-to-Portal Act."  84 Fed. Cl. 319, 323 (2008).  These two cases "ruled on the Portal-to-Portal exception as applied to federal government employees seeking compensation for driving to and from work."  Redd, 83 Fed. Cl. at 592.  In Bobo, the Federal Circuit addressed a claim by United States Department of Justice, Immigration and Naturalization Services ("INS") agent dog handlers who sought compensation for commuting time between home and work with their dogs pursuant to the FLSA.[5]  136 F.3d at 1466-67.  Although the Bobo court acknowledged that some of the activities in which the INS agents engaged during the commute were arguably compensable under the FLSA, see id. at 1468

---

[4]  There are, however, two narrow exceptions to this general rule: "if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision."  Strickland v. United States, 423 F.3d 1335, 1338 n.3 (2005).

[5]  The INS agents argued that their transportation time was compensable "because of various restrictions placed upon them during their commute, such as the prohibition of personal stops, and various duties, such as the need to make stops for the dogs to exercise and relieve themselves."  Bobo, 136 F.3d at 1467.  Although they were not compensated for their commuting time, the INS agents were compensated an extra hour each day "for conducting dog care tasks at home."  Id.

(accepting as true allegations that "the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities"), it ultimately affirmed the trial court's judgment declining to compensate the INS agents for driving time because their duties and activities while driving were de minimis, see id. (noting that summary judgment is appropriate when "the claim is for work that is merely de minimis"). It concluded:

> Here, the main restriction on the INS Agents is the prohibition on making personal stops during their commute. However, such a restriction on their use of a government vehicle during their commuting time does not make this time compensable. The other asserted burdens, such as the need to make stops for the dogs to exercise and relieve themselves and the requirement to sign on to the radio, do not pass the de minimis threshold either. Taken as alleged, they are infrequent, of trivial aggregate duration, and administratively impracticable to measure.

Id.

Unlike in Bobo, the Adams II plaintiffs were law enforcement officers within various government agencies.[6] 471 F.3d at 1323. The Adams II plaintiffs' claim was "not identical but very similar," id. at 1327, to the claim asserted in Bobo: whether their commutes from home to work in government-owned police vehicles constituted compensable work under the FLSA, id. at 1323. As the Adams II court noted, "[t]he primary difference between the commuting conditions in Bobo and those in this case militates against plaintiffs, who do not make uncompensated dog-walking stops. Under the Portal-to-Portal Act, plaintiffs' driving time is not compensable." Id. at 1327. The court noted that "merely commuting in a government-owned vehicle is insufficient," id. at 1325, and concluded that "Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is non-compensable if the labor beyond the mere act of driving the vehicle is de minimis. That is the case here," id. at 1328. Accordingly, the Adams II court held that a plaintiff seeking compensation for driving between home and work "must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." Id. at 1325.

Thus, the Federal Circuit determined in both Bobo and Adams II that the plaintiffs did not satisfy the de minimis test. See Bobo, 136 F.3d at 1468; Adams II, 471 F.3d at 1328. In Adams II, this conclusion was unaffected by the plaintiffs' claims that their circumstances were unique and therefore distinguishable from Bobo. See Adams II, 471 F.3d at 1327 (noting, for example, the plaintiffs' argument that "unlike in Bobo, there was a 'custom or practice' of compensating them for their commuting time"); see also Adams I, 65 Fed. Cl. at 235 (noting, but ultimately

---

[6] The Adams II plaintiffs were employed by the United States Secret Service; United States Customs and Border Protection; the Internal Revenue Service; the Bureau of Alcohol, Tobacco, and Firearms; and the DEA. 471 F.3d at 1323.

rejecting, the plaintiffs' contention that "there are factual differences between the commutes of the border patrol agents in Bobo[] and the commutes of plaintiffs here, because plaintiffs were not transporting dogs; instead they were issued vehicles 'to respond to emergency calls immediately from . . . home'"). Consequently, "[t]he test articulated in Adams[II] and Bobo . . . remains the controlling legal standard by which this court will evaluate [plaintiff's] claims," Forbes, 84 Fed. Cl. at 323-24, and "unless the facts of this case are distinguishable from the facts in Adams II, or there has been a change in the applicable law, the Federal Circuit's interpretation of the FLSA and the exception to it created by the Portal-to-Portal Act, as stated in Bobo and Adams II, controls this case," Easter, 83 Fed. Cl. at 241.

### B.  The Facts of This Case Are Indistinguishable From Bobo and Adams II

Plaintiff argues that her diversion investigator driving claims "were not litigated at all in Adams [II]." Pl.'s Opp'n 13. According to plaintiff, she performs "field work" during her home and work commute pursuant to 31 U.S.C. § 1344 and its implementing regulations set forth at 41 C.F.R. § 102-5. Id. at 13-16. She claims that "home-work driving for the purposes of conducting 'field work' is FLSA compensable since [the regulations] show that such driving meets [the] OPM's regulatory requirements for defining FLSA 'hours of work.'" Id. at 16.

Section 1344 provides, in relevant part:

> (a)(1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.
> (2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is–
>> (A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section, or
>> (B) essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties,
>
> is transportation for an official purpose when approved in writing by the head of the Federal agency.

31 U.S.C. § 1344(a)(1)-(2). Plaintiff, however, does not describe the nature of her "field work" that she may perform while driving to or from work. See Def.'s Reply 6 (arguing that plaintiff "blurs the distinction" between driving during the course of performing field work and time solely spent driving between home and work). As defendant notes, "[d]riving from home to a field work location is simply not the same as performing field work," id. at 6 n.2, and, as the

court noted in Morgan v. United States, "[a] change in the location of plaintiff's work does not materially alter the activities that plaintiff engages in while driving and does not distinguish the job classification of diversion investigator from that of the border patrol agents in Bobo . . . or the law enforcement officers in Adams II," 84 Fed. Cl. 391, 394 (2008).  Furthermore, the Adams II court considered and ultimately rejected arguments that 31 U.S.C. § 1344 affected the outcome of that case.  It specifically noted that "the statute defines the commutes at issue here to be essential to the agencies for budgetary purposes, [but] it does not follow that those commutes constitute compensable work by the officers.  The fact that the commutes are not an illegal expenditure of government resources does not change the result[.]"  471 F.3d at 1327-28.  Because plaintiff has not identified material differences between the nature of her commute and those at issue in Bobo and Adams II, the court concludes that this case is factually indistinguishable from and is legally controlled by the decisions in those cases.[7]

### C. No Change in the Applicable Law Has Occurred Since the Federal Circuit Determined Adams II

Plaintiff asserts that changes in the law since the Federal Circuit decided Adams II render that case inapposite.  See Pl.'s Opp'n 2-9.  "Any change in the applicable law would have to come from the Federal Circuit or the Supreme Court."[8]  Redd, 83 Fed. Cl. at 593.  To that end,

---

[7] Other judges on the Court of Federal Claims have reached similar determinations.  See, e.g., Boyer, 2008 WL 5136045, at *7 ("The commutes at issue in this case are substantially the same as the commutes . . . that were reviewed in Adams I and Adams II."); Morgan, 84 Fed. Cl. at 399 (concluding that "[t]he material facts in this case are . . . virtually identical to the material facts in Adams II"); Forbes, 84 Fed. Cl. at 326 (stating that "it is not evidence that the purpose of providing government vehicles to diversion investigators differs from the purposes of providing such vehicles to canine handler agents (as in Bobo) or to law enforcement officers (as in Adams [II])" and concluding that "the underlying factual predicates of the driving claims are sufficiently similar to justify applying the standard articulated in Adams [II] and Bobo as binding precedent"); Redd, 83 Fed. Cl. at 594 ("Plaintiffs have failed to distinguish the facts in this case from the facts of Bobo and Adams II . . . ."); Easter, 83 Fed. Cl. at 250 (following the precedent set forth in Adams II, in part, because "the facts of this case are substantially identical to those in Adams II").  While other Court of Federal Claims decisions do not set binding precedent for separate and distinct cases pending before the court, they are nonetheless persuasive.  W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994).

[8] To the extent that plaintiff relies upon two United States Court of Appeals for the Second Circuit ("Second Circuit") decisions, Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008), and Reich v. New York City Transit Authority, 45 F.3d 646 (2d Cir. 1995), in support of her position that her driving time is compensable under the FLSA, see Pl.'s Opp'n 8-9, the court rejects this argument.  The court is bound by the statutory interpretations set forth by the Federal Circuit, see Redd, 83 Fed. Cl. at 591 & n.1, and is not bound by decisions of other federal appellate courts, although those decisions may be "persuasive in their own right," Bankers Trust

and as noted above, plaintiff contends that "whatever else may be said regarding the panel's conclusion in Adams [II] that the driving involved there was not FLSA compensable, the reasoning in Adams [II] has been nullified" by the Supreme Court's decisions in Coke and Brand X Internet Services. Pl.'s Opp'n 3. But see Def.'s Reply 2 (arguing that neither decision pertained to the FLSA), 3 (arguing that Coke and Brand X Internet Services "effected no change in the law involved here"). The Coke court, plaintiff asserts, "ruled . . . that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes, formulate policy[,] and make rules 'to fill any gap left, implicitly or explicitly, by Congress.'" Pl.'s Opp'n 3 (quoting Coke, 127 S. Ct. at 2345). However, the Coke court did not address whether home-to-work driving was compensable as "time worked" under the FLSA. Rather, it addressed whether a United States Department of Labor ("DOL") regulation, which pertained to an FLSA exemption for domestic service employees who provided companionship services for individuals who were otherwise unable to care for themselves, was valid and binding "in light of the [FLSA's] text and history, and a different (apparently conflicting) regulation . . . ." Coke, 127 S. Ct. at 2334. Thus, "Coke dealt specifically with whether or not a certain DOL regulation (not involving commuting time) was valid and enforceable." Easter, 83 Fed. Cl. at 246. Indeed, nothing that the Coke court addressed remotely concerned or applied to claims for driving to and from work under the Portal-to-Portal Act. See Boyer, 2008 WL 5136045, at *4 ("A more fundamental flaw with plaintiffs' reliance on Coke is that Coke did not expressly overrule Adams II. . . . Coke did not discuss . . . Adams II or Bobo, or any of the cases upon which the Federal Circuit relied for its holdings in those two decisions."). As such, the court concludes that Coke is neither relevant to the claim at issue in this case nor authority that overrules or repudiates Bobo or Adams II.

Furthermore, the court rejects plaintiff's reliance upon Brand X Internet Services as authority that overrules or repudiates Adams II. As a threshold matter, the court notes that the Brand X Internet Services decision was issued before Adams II. As such, Brand X Internet Services simply "cannot be construed to be a 'subsequent Supreme Court decision' justifying the rejection of controlling Federal Circuit precedent . . . ." Id. (quoting Strickland, 423 F.3d at 1338 n.3) (citation omitted). For this reason alone, the court is unpersuaded that Brand X Internet Services requires it to ignore the precedential effect of Adams II.

Even if Brand X Internet Services had been decided after Adams II, the case did not concern or implicate the FLSA or concern any other significant issue presented by the case sub judice. Indeed, Brand X Internet Services instructs that a judicial construction does not preclude an administrative agency from adopting a subsequent interpretation so long as the judicial construction held that the statute was ambiguous. 545 U.S. at 982-83; see also id. at 983 (discussing the Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837 (1984), and explaining that an agency "remains the authoritative

---

N.Y. Corp. v. United States, 225 F.3d 1368, 1371 (Fed. Cir. 2000). No matter how persuasive the court may find Singh and Reich, plaintiff's claim is controlled by Federal Circuit–and not Second Circuit–precedent.

Case 1:07-cv-00003-MMS    Document 40    Filed 12/31/08    Page 12 of 14

interpreter (within the limits of reason)" of an ambiguous statute even if the agency chooses a construction that differs from the construction articulated by, but is nevertheless consistent with the holding of, the court). Fundamentally, the issues presented in Brand X Internet Services were "not the same issues" presented by any of the Court of Federal Claims plaintiffs who are asserting FLSA home-to-work driving claims. Easter, 83 Fed. Cl. at 248. In fact, plaintiff never alleges that the OPM enacted new regulations that interpreted the FLSA following the Federal Circuit's determinations in Bobo and Adams II. See also Redd, 83 Fed. Cl. at 593 ("[A]pplying Adams II does not implicate Brand X [Internet Services], because no relevant [OPM] regulations have issued since Adams II.").

Additionally, plaintiff asserts that the Federal Circuit's decision in Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied sub nom. Lotz v. United States, 540 U.S. 982 (2003), represents binding authority that "requires this Court to declare plaintiff's driving to be FLSA compensable." Pl.'s Opp'n 13. In Billings, the Federal Circuit addressed an apparent conflict in the manner in which the DOL and the OPM defined the term "executive" in one exemption under the FLSA. 322 F.3d at 1333 ("The crux of appellants' case is the contention that the OPM definition of 'executive' employee conflicts with the Labor Department definition of 'executive' employee . . . ."). It noted that the FLSA was "silent on the definition of 'executive' employee," id. at 1333, concluded that "the OPM definition of an 'executive' employee is a reasonable interpretation of the [FLSA]," id. at 1334, and affirmed the trial court's grant of summary judgment in favor of the government, id. at 1335. As the Redd court stated,

> [u]nlike Billings, plaintiffs' claim to compensation has nothing to do with the definition of the word "executive" and the executive exemption to the FLSA. Moreover, this case does not involve competing definitions of a word–or gap–in the FLSA. In fact, judicial consensus has emerged as to what driving is, where home is, and what work is. The disagreement centers on what level of work is and is not compensable–activities that exceed the de minimis threshold necessary to trigger compensable work under the FLSA. Billings does not speak to that issue and therefore has no bearing on Bobo or Adams [II].

83 Fed. Cl. at 593-94. The court agrees. Nothing in Billings supports plaintiff's arguments in this case that her driving is FLSA compensable and that Bobo and Adams II are inapposite, a conclusion that is supported by similar decisions in this court concerning home-to-work claims under the FLSA. See Boyer, 2008 WL 5136045, at *5 ("Like the judges in Forbes, Morgan, Redd[,] and Easter, the undersigned finds nothing in Billings that challenges the precedential authority of Adams II.").

**D. The Doctrine of Stare Decisis Does Not Negate the Binding Effect of Bobo and Adams II**

Plaintiff argues that "it is well-settled that at best 'the doctrine of stare decisis applies to only legal issues and not issues of fact.'" Pl.'s Opp'n 16 (quoting Avenues in Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005)). In essence, plaintiff maintains that the court is not

-12-

bound by <u>Adams II</u> because the instant case presents "unique and distinct facts . . . related to driving by Diversion Investigators . . . ." <u>Id.</u> at 17. As the <u>Redd</u> court indicated, "[t]his intriguing proposition could be helpful if the court were to determine that the factual differences rendered the binding precedent inapplicable." 83 Fed. Cl. at 591 n.1.

The doctrine of stare decisis "'is of fundamental importance to the rule of law.'" <u>Wilson v. United States</u>, 917 F.2d 529, 537 (Fed. Cir. 1990). Stare decisis is defined as "[t]he doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation." <u>Black's Law Dictionary</u>, <u>supra</u>, at 1414. In her Notice of Indirectly Related Cases, plaintiff acknowledged that the outcome of <u>Adams I</u> "is likely to call for a determination of the <u>same or substantially similar questions as are presented in the instant case</u>." Pl.'s Notice Indirectly Related Cases 1-2 (emphasis added); <u>see also</u> <u>id.</u> (noting that thirty-three cases, including <u>Easter</u> and <u>Forbes</u>, also call for a determination of the same or substantially similar questions as are presented in this case). It is indisputable that there are no material factual distinctions between the driving at issue in this case and the driving considered by the Federal Circuit in <u>Bobo</u> and <u>Adams II</u>. The court declines to embrace plaintiff's argument that the doctrine of stare decisis compels a different result. Even if the court found plaintiff's stare decisis argument meritorious, it notes that "the doctrine of stare decisis is tailor-made to further consistency and predictability–two attributes that are notoriously lacking in statutory interpretation doctrine." Sydney Foster, <u>Should Courts Give Stare Decisis Effect to Statutory Interpretation Methodology?</u>, 96 Geo. L.J. 1863, 1866 (2008). Thus, assuming, <u>arguendo</u>, that the court could deviate from the Federal Circuit's interpretations of the FLSA, strong considerations militate against it doing so.

### E. The Federal Circuit's Refusal to Grant Rehearing in <u>Adams II</u> Does Not Affect Its Precedential Value

Additionally, plaintiff argues that she is entitled to litigate her claim, "notwithstanding the Federal Circuit's decision in <u>Adams [II]</u>," because the Federal Circuit's denial of the appellants' petition for rehearing en banc in <u>Adams II</u> does not necessarily mean that the entire Federal Circuit agreed with the <u>Adams II</u> decision. Pl.'s Opp'n 18. Plaintiff emphasizes that "the denial of a petition for writ of certiorari provides no indication of the Supreme Court's views upon the merits of a case . . . ." <u>Id.</u> at 17 (citing cases). While plaintiff is certainly correct that she is entitled to pursue her claim, she cannot overcome the fact that "[a] prior precedential decision on a point of law by a panel of [the Federal Circuit] is binding precedent and cannot be overruled or avoided unless or until the court sits <u>en banc</u>." <u>Preminger v. Sec'y of Veterans Affairs</u>, 517 F.3d 1299, 1309 (Fed. Cir. 2008) (citing <u>Sacco v. Dep't of Justice</u>, 317 F.3d 1384, 1386 (Fed. Cir. 2003)). That the entire Federal Circuit declined to reconsider <u>Adams II</u> in no way renders the <u>Adams II</u> panel decision any less binding upon the court. Thus, the court cannot accept plaintiff's argument to the contrary.

## IV. CONCLUSION

For the reasons stated above, plaintiff fails to demonstrate that the Federal Circuit's decisions in Bobo and Adams II, both of which involve substantially similar facts to the instant case, are distinguishable such that they are not controlling and binding precedent upon the court. Accordingly, defendant's motion for judgment on the pleadings is **GRANTED**. In light of the court's decision, which obviates the need to resume briefing on plaintiff's motion for summary judgment, see supra note 1, plaintiff's motion for partial summary judgment is **DENIED AS MOOT**. The Clerk of Court is directed to enter judgment for defendant. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge